**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


**DANIEL W. SCHLOSSNAGLE,**[1]          *
                                       *
     **Plaintiff,**                    *
                                       *          **Civil No. TMD 15-935**
     **v.**                            *
                                       *
                                       *
**CAROLYN W. COLVIN,**                 *
**Acting Commissioner of Social Security,**    *
                                       *
     **Defendant.**                    *
                              *************


**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Plaintiff Daniel W. Schlossnagle (or Schlosnagle) seeks judicial review under 42 U.S.C.

§ 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the

"Commissioner") denying his application for disability insurance benefits ("DIB") under Title II

of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment and

alternative motion for remand (ECF No. 15) and Defendant's Motion for Summary Judgment

(ECF No. 16).[2]  Plaintiff contends that the administrative record does not contain substantial

evidence to support the Commissioner's decision that he is not disabled.  No hearing is

---

[1] Although Plaintiff's name appears on the docket as "David W. Schlossnagle," his name appears
in the complaint (ECF No. 1) and throughout the administrative transcript (ECF No. 12) as
"David W. Schlosnagle."

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**.

# I

## Background

Plaintiff was born in 1977, has one year of college education, and previously worked as a paratrooper, assembler at a container company, housekeeping supervisor, and security guard/officer.  R. at 38, 201, 206.  Plaintiff protectively filed an application for DIB on April 25, 2011, alleging disability beginning on October 15, 2008, due to post-traumatic stress disorder ("PTSD"), back trauma, depression, anxiety, and brain injury.  R. at 153-60, 201, 205.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 73-95.  On October 22, 2013, ALJ Brian P. Kilbane held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 44-72.  On November 27, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of October 15, 2008, through the date of the decision.  R. at 18-43.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 4, 2015.  R. at 1-5, 13-17.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 1, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

**A.      State Agency Medical Consultants**

On September 13, 2011, a state agency consultant, F. Ewell, Ph.D., using the psychiatric

review technique ("PRT") under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental

impairments under Listings 12.04, 12.06, and 12.09 relating to affective disorders, anxiety-

related disorders, and substance addiction disorders (R. at 368-81). *See* 20 C.F.R. pt. 404, subpt.

P, app. 1, §§ 12.04, 12.06, 12.09.  Dr. Ewell opined that, under paragraph B of the applicable

listings, Plaintiff's mental impairments of depressive disorder not otherwise specified, PTSD,

and alcohol dependence caused him to experience (1) mild restriction in activities of daily living;

(2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining

concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of

extended duration.  R. at 371-78.  Dr. Ewell noted Plaintiff's diagnosis at the Veterans Affairs

Medical Center on April 25, 2011, of depressive disorder not otherwise specified, alcohol

dependence in full remission, and a GAF score of 60.[3]  R. at 272-73, 380.  Dr. Ewell did not find

evidence to establish the presence of the criteria under paragraph C of the applicable listings.  R.

at 379.  Dr. Ewell thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at

364-67) and opined that he was moderately limited in his ability to (1) maintain attention and

---

[3]  The GAF, or global assessment of functioning, scale rates psychological, social, and
occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n,
*Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).  A GAF
rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.* at 34.  The current edition
of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e.,
including symptoms, suicide risk, and disabilities in its descriptors) and questionable
psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of
Mental Disorders* 16 (5th ed. 2013).

concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (6) respond appropriately to changes in the work setting.  Plaintiff otherwise was not significantly limited.  R. at 364-65.  Dr. Ewell explained that Plaintiff's memory and understanding were adequate, his concentration and persistence were limited by psychological symptoms, he was "[s]omewhat withdrawn from others" in his social functioning, and he was independent with many tasks, so he maintained the ability to perform tasks from a mental health standpoint.  R. at 366.

On June 12, 2012, another state agency consultant, Louis Perrott, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09.  R. at 78-79.  Dr. Perrott opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 78.  Dr. Perrott did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings.  R. at 79.  Dr. Perrott thus assessed Plaintiff's mental RFC (R. at 80-82) and opined that he was moderately limited in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

4

(4) work in coordination with or in proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; and to (7) get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  R. at 80-81.  Plaintiff otherwise was not significantly limited.  R. at 80-81.  Dr. Perrott found that Plaintiff (1) would be able to maintain adequate concentration and attention for at least two-hour intervals with normal breaks with simple, one- to three-step commands and (2) would be able to work in an environment with limited interaction with the public and co-workers.  R. at 81.  Dr. Perrott thus opined:

> Although [Plaintiff] would have some limitations due to his mental conditions, the records and [activities of daily living] show that he would still be able to follow simple directions, complete simple tasks, and complete an average work day/week.
>
> . . . .
>
> [Plaintiff's] documented symptom-related limitations do not prevent him from engaging in routine, competitive employment which does not necessitate extensive social interaction.

R. at 81.

**B.     Hearing Testimony**

**1.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] testified that he last worked as a security officer, but stopped in 2010 due to his anxiety and back problems; he had not attempted to work in the past 3 years; and he had a service-connected parachuting injury in the Army in 1998, during which he suffered a traumatic brain injury.  He noted that he was awarded partial disability from the military because of this accident, from which he was diagnosed with post-traumatic stress disorder (PTSD), severe depression, anger, anxiety, and alcohol dependence, and he reported having 6 psychiatric

hospitalizations in the past. [Plaintiff] lived a quarter of a mile from his parents and was living with his girlfriend, who was currently moving out; he could cook his own meals and tried to care for himself and his home; but if he needed help with such tasks as lifting items or mowing, he asked for help. He admitted to doing laundry or maintenance without help, but said that he did not [do?] social activities; on a typical day, he looked after his house, fixed meals, and went to treatment visits for his impairments; he saw a counselor in the past; and he had difficulty focusing, which prevented him from being able to complete community college classes. [Plaintiff] testified that he typically paced, spent a lot of time cooking, and spent time with his dog during the day; he took medication for insomnia; his hobbies included basic gardening and raising chickens; he could no longer drive, due to anxiety; and he left one of his past jobs because he could not be around others. Last, he alleged that it took him longer to complete tasks; he did not go anywhere, besides to doctors' appointments; there were only a few older farmers with whom he felt comfortable; and though he was initially awarded disability through the military in 2001, he said that his conditions had worsened since then.

In his function report, [Plaintiff] wrote that he had problems with thinking, problem solving, and intense nervousness; he could prepare full meals daily over several hours; and he did such chores as cleaning, laundry, small house repairs, and ironing, which took all day and did not require encouragement or help. He denied needing reminders to do personal care tasks or to take his medications; he went outside daily, could go out alone, and could drive; he went shopping in stores once or twice monthly for food and cleaning supplies; his hobbies included making art and doing housework; he did not spend time with others; and he sometimes fished. [Plaintiff] wrote that he tended not to be social and kept to himself; he could only walk a mile before needing to stretch; he lost interest in things very quickly; he did not finish what he started; he had difficulty getting along with authority figures; and he could not handle stress or changes in routine well. Last, he noted that he used a TENs unit for his back, which was prescribed a year before and which helped with the pain, and his medications of citalopram, buspirone, diphenhydramine, and hydroxyzine made him tired [R. at 218-25].

R. at 28-29; *see* R. at 47-67.

2.    **VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could perform Plaintiff's past relevant

work as an assembler and also could perform the unskilled, heavy and medium[4] jobs of cleaner, hand packer, and warehouse laborer. R. at 69-70. According to the VE, his testimony did not conflict with the *Dictionary of Occupational Titles*.[5] R. at 70. A person needing break periods beyond those customarily afforded employees would not be able to maintain competitive employment. R. at 70-71. Being "off task" more than 10% of the time during an eight-hour workday would preclude all competitive employment. R. at 71. A person absent from work more than two days per month would not be able to maintain employment. R. at 71.

## III

### Summary of ALJ's Decision

On November 27, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of October 15, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was able to perform his past relevant work as an assembler; or (5) could perform other work in the national economy, such as a cleaner, hand packer, or

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id.* § 404.1567(d). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

warehouse laborer.  R. at 23-39.  The ALJ thus found that he was not disabled from October 15, 2008, through the date of the decision.  R. at 39.

In so finding, the ALJ found that Plaintiff had the RFC

to perform a full range of work at all exertional levels.  In addition, despite his mental limitations, he retains the ability to perform simple, unskilled work tasks on a sustained basis in a competitive work environment where there is no more than occasional interaction with co-workers and the general public.

R. at 27.   The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 34.

The ALJ found that,

[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.  He reported at the disability hearing that it took him longer to complete tasks; [he] could [spend] all day cooking; he could not focus well enough to complete community college classes; and he typically paced during the day.  In addition, he wrote in his function report that he lost interest in things very quickly; he did not finish what he started; and he could not handle stress or changes in routine well [R. at 218-25].  Last, the State agency consultants in September 2011 [R. at 364-81] and in June 2012 [R. at 74-84] found that he had moderate limitations in this area.  Thus, the undersigned finds that [Plaintiff] has moderate limitations in maintaining concentration, persistence, and pace.

R. at 26-27.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[7] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996), because the ALJ failed to perform properly a function-by-function analysis. Pl.'s Mem. Supp. Mot. Summ. J. 5-7, ECF No. 15-1. He also asserts that, although the ALJ found that he had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment and hypothetical questions to the VE, instead limiting him to "simple, unskilled work tasks on a sustained basis in a competitive work environment

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

where there is no more than occasional interaction with co-workers and the general public." *Id.*
at 7-9 (citing R. at 27). For the reasons discussed below, the Court remands this case for further
proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis, including the functions" listed in the regulations. "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy." The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted)
(citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand
when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given
that remand would prove futile in cases where the ALJ does not discuss functions that are
'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)
(per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's
capacity to perform relevant functions, despite contradictory evidence in the record, or where
other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*,
729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was
"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform
relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform
them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did
not address. *Id.* at 637; *see Monroe v. Colvin*, __ F.3d __, No. 15-1098, 2016 WL 3349355, at
*9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC

using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff asserts that the ALJ failed to conduct a function-by-function analysis because, although he gave significant weight to Dr. Ewell's opinion (R. at 36), the ALJ failed to adopt the limitations set forth in the consultant's opinion. Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 15-1. Defendant maintains, however, that the ALJ "was not required to adopt every single opinion set forth in the doctor's report." Def.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 16-1. Indeed, this Court previously has stated that, because great weight is not controlling weight, "the ALJ is not required to adopt every limitation set forth in a medical opinion, simply because she assigns it great weight." *Elsey v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2457, 2015 WL 2258540, at *3 (D. Md. May 12, 2015). The Fourth Circuit has recognized, however, that expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the ALJ will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do. *Monroe*, 2016 WL 3349355, at *9; *see Mascio*, 780 F.3d at 636; SSR 96-8p, 1996 WL 374184, at *4. In this case, the ALJ gave significant weight to Dr. Ewell's opinion after explicitly reviewing the functional limitations opined by the state agency consultant. R. at 36. "[A]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015). Thus, "[b]ecause the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96-8p." *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015); *cf. Harrison v. Colvin*, No. 5:15-CV-00108-MOC, 2016 WL 3679294, at *5-6 (W.D.N.C. July 11,

2016) (remanding under *Mascio* because ALJ neither credited nor discredited state agency consultants' opinions regarding claimant's functional limitations).

Plaintiff next contends that, in assessing his RFC and in presenting hypothetical questions to the VE, the ALJ failed to consider adequately his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*.  Pl.'s Mem. Supp. Mot. Summ. J. 7-9, ECF No. 15-1.  In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.*  The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted);

15

*see* 20 C.F.R. pt. 404, subpt. P, app. 1.   In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.   20 C.F.R. §§ 404.1520a, 416.920a.   These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.   20 C.F.R. §§ 404.1520a(a), 416.920a(a).   This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."   *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).   If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.   *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).   According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.   *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).   If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.   *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).   If so, then the claimant will be found to be disabled.   If not, the reviewing authority will then assess the claimant's RFC.   *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).   With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).   "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.  [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction."  *Id.*   Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."   *Id.* § 12.00(C)(2).   Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   *Id.* § 12.00(C)(3).   "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.  In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."   *Id.*   Finally, "[*e*]*pisodes of decompensation* are exacerbations or

temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's hypothetical questions to the VE and the corresponding RFC assessment limiting Plaintiff to "simple, unskilled work tasks on a sustained basis in a competitive work environment" do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638. Further, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to "no more than occasional interaction with co-workers and the general public" (R. at 27, 69) accounts for Plaintiff's mild difficulties in social functioning (R. at 26) but does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace (R. at 26-27). *See, e.g.*, *Baker v. Comm'r, Soc. Sec.*, Civil Case No. JFM-15-3542, 2016 WL 3900605, at *1-2 (D. Md. July 18, 2016); *Denton-Brown v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-1269, 2016 WL 107939, at *3 (D. Md. Jan. 8, 2016); *Martin v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-

335, 2015 WL 7295593, at *3 (D. Md. Nov. 18, 2015); *Elsey v. Comm'r, Soc. Sec. Admin.*, Civil

No. SAG-14-2457, 2015 WL 2258540, at *4 (D. Md. May 12, 2015); *Claiborne v. Comm'r, Soc.*

*Sec. Admin.*, Civil No. SAG-14-1918, 2015 WL 2062184, at *3 (D. Md. May 1, 2015); 20 C.F.R.

pt. 404, subpt. P, app. 1, § 12.00(C)(2).  *But see Hillard v. Colvin*, Civil Action No. ADC-15-

1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for

Plaintiff's limitation in concentration and persistence by restricting him to work 'without

frequent interaction with co-workers or the public.'"); *Tilley v. Colvin*, Civil No. TMD 14-3266,

2016 WL 775420, at *10 (D. Md. Feb. 29, 2016); *Linares*, 2015 WL 4389533, at *4 ("The ALJ

accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he

accounted for her limitation in concentration and persistence by restricting her to a stable work

environment with only occasional public contact.").  Although Defendant points to evidence in

the record to support the ALJ's conclusion that, despite Plaintiff's moderate difficulties in

maintaining concentration, persistence, or pace, he was capable of performing simple, unskilled

work tasks on a sustained basis in a competitive work environment (Def.'s Mem. Supp. Mot.

Summ. J. 19-20, ECF No. 16-1), "the issue in this case is not whether the record contains

evidence that might support the ALJ's conclusions; it is whether the ALJ explained the apparent

discrepancy between [his] step three finding and [his] RFC assessment."  *Talmo*, 2015 WL

2395108, at *3.  Further, although Defendant contends that any *Mascio* error by the ALJ was

harmless (Def.'s Mem. Supp. Mot. Summ. J. 20-21, ECF No. 16-1), "the Fourth Circuit has

declined to find harmless error where an error or omission precludes meaningful review."

*Jeffries ex rel. J.J.J. v. Comm'r, Soc. Sec.*, No. JKB-15-1727, 2016 WL 3162800, at *2 (D. Md.

June 7, 2016) (citing *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (per curiam); *Mascio*,

780 F.3d at 636-37); *see Radford*, 734 F.3d at 296.  In short, neither the ALJ's RFC assessment

nor his hypothetical questions to the VE address Plaintiff's ability to stay on task, and the Court

is left to guess how the ALJ accounted for this ability despite finding that Plaintiff has moderate

difficulties in maintaining concentration, persistence, or pace.  Remand thus is appropriate.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is

**DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.  Plaintiff's

alternative motion for remand (ECF No. 15) is **GRANTED**.  Defendant's final decision is

**REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is

**REMANDED** for further proceedings consistent with this opinion.  A separate order shall issue.

Date: August 1, 2016                                        _____/s/_____
                                                                            Thomas M. DiGirolamo
                                                                            United States Magistrate Judge